IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| **Richard Balter,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:17cv1188 (AJT/JFA)** |
| | ) | |
| **United States of America,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Richard Balter, a federal inmate proceeding pro se, has filed a complaint pursuant to the
Federal Torts Claim Act ("FTCA"), 28 U.S.C. §§ 2671 et seq.[1] Defendant has filed a Motion for
Partial Dismissal and Partial Summary Judgment, along with a memorandum of law and exhibits
in support thereof. Dkt. Nos. 36-38. Plaintiff has filed an opposition, as well as an affidavit and
Statement of Disputed Facts. Dkt. Nos. 42-44. Defendant filed a reply. Dkt. No. 45. This
matter is now ripe for adjudication. For the reasons stated below, defendant's motion will be
granted, and this matter will be dismissed.

### I. Background

Plaintiff is an inmate incarcerated at FCC Petersburg. Amend. Comp. ¶ 5. On March 24,
2015, plaintiff fell in the shower because another inmate left soap on the shower floor and
plaintiff, who is blind, did not know the soap was there. Id. ¶ 8, Ex. 1. As a result, plaintiff
twisted his ankle. Id. ¶ 8. In June and July of 2015, he went to see the medical staff every day
regarding severe pain in his lower back and right leg, as well as numbness in his right foot. Id. ¶

---

[1] Although plaintiff's complaint may be liberally construed to raise other claims, he has
repeatedly stated that he is only raising claims pursuant to the FTCA. See, e.g., Dkt. No. 4; Pl.'s
Opp. at 7-8.

9. Plaintiff was evaluated by Physician Assistant Hall on July 20 and 23, 2015, and prescribed plaintiff 800 milligrams of Ibuprofen three times a day for 180 days. Id. ¶ 11, Exs. 2-3.

A radiology report of a lumbar spine and pelvic x-ray dated July 27, 2015, states that the findings are "negative except for moderate degenerative disc disease" and "mild osteoarthritis of the hips." Id. ¶ 14, Exs. 6-7. That same day, plaintiff was evaluated by Physician Assistant Hall. Id. at Ex. 8. On July 28, 2015, Dr. DiCocco prescribed acetaminophen with codeine, to be taken twice a day, and gabapentin, also to be taken two times a day, each for fourteen days. Id. ¶ 13. During a period of four to six weeks, plaintiff was prescribed "Ibuprofen 700 mg., Tylenol Acetaminophen/Codine [sic] 300/30 mg., Prednisone 5 mg., Percocet, Oxoxodone [sic] 5 mg., Codine [sic], Gabapentin 600 mg., Indomethocin 50 mg., Morphine Sulfate 20 mg., Ketorolac Tromethamine Injection 30 mg., Naproxen 250 mg., [and] Baclofen 10 mg." Id. ¶ 60, Exs. 9-10.

On August 5, 2015, Dr. DiCocco noted that plaintiff's pain and numbness "raise[] the question of spinal cord/lumbosacral compromise" and ordered that plaintiff be scheduled for a lumbar and sacral MRI on "an urgent basis if not emergent basis." Id. ¶ 14, Ex. 4. This MRI was ordered to look for evidence of "HNP or neoplastic process or trauma." Id. ¶ 14. The MRI was never scheduled. Id. ¶ 19. On August 6, 2015, plaintiff's morphine was increased to 40 milligrams daily. Id. "A few days prior to August 9, 2015," plaintiff was in severe pain, however, an unnamed lieutenant "made a diagnosis causing" plaintiff to not be seen by the medical staff. Id. ¶¶ 55-57.

On August 9, 2015, plaintiff was in severe pain, vomiting, incontinent, confused, and unresponsive to verbal stimuli. Id. ¶¶ 63, 67. The medical staff ordered that plaintiff be taken to the John Randolph Medical Center because of a suspected drug overdose. Id. ¶¶ 58, 68, 70, Ex. 19.

While plaintiff was at the hospital, an August 10, 2015 MRI of his lower spine revealed the following:

2

- L2-3 level: minor bulge and mild facet arthrosis without central canal comprise or neural foraminal narrowing.

- L3-4 level: minor bulge and mild facet arthrosis and mild to moderate central canal stenosis.

- L4-5 level: right paracentral protrusion with large disc protrusion with inferior migration that results in severe central canal stenosis with moderate bilateral neural foraminal narrowing.

- L5-S1 level: minor bulge and mild facet arthrosis without significant central canal compromise or neural foraminal narrowing.

Id. at Ex. 11. The findings were that plaintiff had a herniated disc and compression fracture of the LS spine. Id. ¶ 30, Ex. 13. Finally, plaintiff was found to be in acute renal failure. Id. ¶ 29, Ex. 12.

On August 14, 2015, plaintiff underwent spinal surgery. Id. ¶ 31, Ex. 14. A few days after the surgery, plaintiff informed the surgeon that his right leg and foot were numb. Id. ¶ 42. On September 28, 2015, Dr. Winbush noted that plaintiff had changes to the vertebroplasty at L5 and degenerative changes of the spine. Id. ¶ 32, Ex. 15. Several months after the surgery, plaintiff informed Dr. Prakash that his right leg and foot were numb, and an MRI was approved on December 3, 2015, however, the MRI did not occur until thirteen months later. Id. ¶ 43-45, Ex. 16. The MRI revealed a pinched nerve; however, plaintiff has been told that nothing can be done until he is evaluated by the orthopedic surgeon. Id. ¶ 47. As of March 15, 2017, plaintiff had not seen the orthopedic surgeon. Id. ¶ 48. Regarding his spinal injury, the staff at Petersburg were negligent in (1) assuming it could be resolved with pain medication and (2) failing to order the emergent MRI. Id. ¶¶ 33-34.

## II. Motion to Dismiss

### A. Standard of Review

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a complaint or its claims may be dismissed for lack of subject-matter jurisdiction. When a defendant challenges the existence of subject-matter jurisdiction, courts may "regard the pleadings as mere evidence on the issue [ ] and may consider evidence outside [those] pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir.1991); see Virginia v. United States, 926 F.Supp. 537, 540 (E.D.Va.1995) (noting that, upon a defendant's challenge to the existence of subject-matter jurisdiction, the court is to "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject[-]matter jurisdiction exists"). As the party asserting jurisdiction, it is plaintiff's burden to prove that federal jurisdiction over his claim is proper. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir.1982).

### B. Analysis

Generally, the United States and its agencies enjoy sovereign immunity from suit unless Congress has explicitly abrogated such immunity. United States v. Sherwood, 312 U.S. 584, 586 (1941). The FTCA provides a limited waiver of that immunity insofar as it allows the United States to be held liable "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government ... under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(2); see Suter v. United States, 441 F.3d 306, 310 (4th Cir. 2006), cert. denied, 127 S.Ct. 272 (2006). "[A] waiver of the Government's sovereign immunity will be strictly construed, in

terms of its scope, in favor of the sovereign." Lane v. Pena, 518 U.S. 187, 192 (1996) (citations omitted).

Before a plaintiff can bring an FTCA claim to federal court, however, he must have exhausted his claim by presenting it to the appropriate federal agency, and the agency must have denied the claim in writing. 28 U.S.C. § 2675(a). The claim must be presented to the appropriate agency within two years of the accrual of the claim, or it is "forever barred." 28 U.S.C. § 2401(b). To properly "present" a claim to a federal agency, the plaintiff must provide a written statement "sufficiently describing the injury to enable the agency to begin its own investigation," GAF Corp. v. United States, 818 F.2d 901, 905 (D.C. Cir. 1987), as well as provide "a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death," 28 C.F.R. § 14.2(a); see also Ahmed v. United States, 30 F.3d 514, 516-17 (4th Cir. 1994). Exhaustion of remedies is a jurisdictional requirement, and a court may not entertain an FTCA suit based on an unexhausted claim. See McNeil v. United States, 508 U.S. 106, 113 (1993); Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986).

Since 2015, plaintiff has only filed one administrative tort claim related to the provision of medical care. Def.'s MSJ, Harris Decl. More specifically, on October 25, 2016, plaintiff filed a Standard Form 95 claiming "negligent malpractice and failure/refusal by [Petersburg] medical staff to provide adequate, effective, competent, effective [sic] and timely medical care for spine illness/injury/conditions rendering me disabled and in severe pain and distress." Id. at Att. 4. Thus, defendant asserts, plaintiff's claims based on (1) the alleged drug overdose, (2) any actions taken by non-medical staff, and (3) any actions taken after October 2016, are unexhausted.

Plaintiff does not dispute that he did not properly exhaust the claims listed above, however, he asserts that his lack of exhaustion is not fatal to his claims for two reasons. First, plaintiff argues that he did not need to exhaust the unexhausted claims because the administrative remedies were "unavailable" pursuant to the standard set out in Ross v. Blake, 136 S.Ct. 1850

5

(2016). Pl.'s Opp. at 4-6. In <u>Ross</u>, the Court held that, under the Prison Litigation Reform Act ("PLRA"), "a prisoner need exhaust only 'available' administrative remedies," and then laid out three situations in which administrative remedies would be considered "unavailable." <u>Ross</u>, 136 S. Ct. at 1856, 1859-60. The Court's analysis was based on the statutory language of 42 U.S.C. § 1997(e)a, which "contains one significant qualifier: the remedies must indeed be 'available' to the prisoner." <u>Id.</u>

Plaintiff's <u>Ross</u> argument fails because <u>Ross</u> does not apply to FTCA cases, which must be exhausted pursuant to 28 U.S.C. § 2675(a), not § 1997. See <u>Mendoza v. United States</u>, 661 F. App'x 501, 502 (9th Cir. 2016) ("We reject [plaintiff's] contention that exhaustion under the Prison Litigation Reform Act satisfies the requirement to exhaust under the FTCA."); <u>West v. United States</u>, 2018 WL 3384909, at *7 (S.D.W. Va. June 13, 2018) ("[T]he exhaustion requirements concerning FTCA and <u>Bivens</u> actions differ.") (citations omitted), report and recommendation adopted, 2018 WL 3381418 (S.D.W. Va. July 11, 2018); <u>Elliott v. Wilson</u>, 2017 WL 1185213, at *13 (D. Minn. Jan. 17, 2017) ("The FTCA imposes an exhaustion requirement separate from that found in § 1997e(a).") (citations omitted), report and recommendation adopted, 2017 WL 1180422 (D. Minn. Mar. 29, 2017).

In addition, <u>Ross</u> should not be extended to apply to FTCA claims because § 2675(a) does not contain the same, or even similar language, limiting exhaustion only to administrative remedies that are available, as provided for in § 1997. See 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.").

6

Thus, assuming without deciding that administrative remedies were "unavailable," it would not excuse plaintiff's lack of exhaustion.

Plaintiff's second argument is that his claims should be deemed exhausted because he brought his problems to the attention of prison officials. Pl.'s Opp. at 6-7. At the same time, plaintiff properly states that "[l]itigants must strictly comply with the procedural requirements of the FTCA."[2] Id. at 6. Plaintiff never filed a claim requesting a sum certain regarding his claims based on (1) the alleged drug overdose, (2) any actions taken by non-medical staff, and (3) any actions taken after October 2016. Because plaintiff did not strictly comply with the FTCA's exhaustion requirements, these claims cannot be deemed exhausted.

Accordingly, plaintiff's claims based on (1) the alleged drug overdose, (2) any actions taken by non-medical staff, and (3) any actions taken after October 2016 are unexhausted and will be dismissed for lack of jurisdiction.

### III. Motion for Summary Judgment

#### A. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial... by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v.

---

[2] It is also noted that plaintiff's references to the exhaustion requirements under the PLRA are inapposite as the PLRA exhaustion requirements differ from the FTCA exhaustion requirements.

Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### B. Analysis

As previously stated, the FTCA provides a limited waiver of the United States' sovereign immunity to allow actions seeking monetary relief for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The government is only "liable in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, and the extent of its liability is determined "in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1). Here, where plaintiff's allegations surround events taking place in Virginia, Virginia law governs the manner and extent to which the United States may be liable as a defendant. Accordingly, the Virginia Medical Malpractice Act ("VMMA"), Va. Code §§ 8.01-581.1, et seq., provides the framework upon which to analyze plaintiff's FTCA claims. See Starns v. United States, 923 F.2d 34 (4th Cir. 1991) (applying VMMA in FTCA action involving federally operated health care providers in Virginia).

> As a threshold matter, the Virginia Medical Malpractice Act ("VMMA"), Va. Code §§ 8.01-581.1, et seq., requires that a party alleging medical malpractice obtain an expert certification of merit prior to serving process upon defendant. Va. Code § 8.01-20.1. Significantly, the failure to comply with this certification requirement is grounds for dismissal. Equally significant is that the VMMA provides only a limited exception to the certification requirement; the requirement may be excused only where "plaintiff, in good faith, alleges a medical malpractice action that asserts a theory of liability where expert testimony is unnecessary because the alleged act of negligence clearly lies within the range of the jury's common knowledge and experience." Va. Code § 8.01-20.1.

Parker v. United States, 475 F. Supp. 2d 594, 596-97 (E.D. Va. Feb. 1, 2007) (citations omitted), aff'd, 251 F. App'x 818 (4th Cir. 2007). "This exception applies only in 'rare instances.'"

8

Baxter v. United States, 2016 WL 3618363, at *4 (E.D. Va. July 6, 2016) (quoting Beverly Enters.–Va., Inc. v. Nichols, 441 S.E.2d 1, 3 (Va.1994)).

Plaintiff does not dispute that he has not yet obtained an expert certification. Rather, he argues that he was not required to obtain one because the evidence clearly establishes that defendant's negligence was the proximate cause of him not receiving an MRI, as well as his pain and "permanent damage." Pl's. Opp. at 11. Plaintiff also states that defendants knew or should have known that a delay in the MRI might cause additional damage and pain. Id. at 11-12.

Plaintiff began to complain of pain in June 2015, and was evaluated by medical staff on July 20 and 23, 2015, at which point he was prescribed Ibuprofen. In addition, plaintiff was evaluated on July 27, 2015, and had a lumbar and pelvic x-ray that same day. The next day, plaintiff was prescribed pain medication. On August 5, 2015, an emergent lumbar MRI was requested, and even though it was not scheduled by the Petersburg medical staff before plaintiff went to the hospital on August 9, 2015, one was performed at the hospital on August 10, 2015.

"Where... a plaintiff calls into question a quintessential professional medical judgment, the matter can be resolved only by reference to expert opinion testimony." Parker, 475 F.Supp.2d at 597 (internal quotation marks and citation omitted). A physician's decision to prescribe or recommend certain courses of treatment for a patient's pain is a question of professional medical judgment, and an expert certification is therefore required to challenge it. See Id. at 597 ("[I]t is difficult to imagine that a factfinder, equipped solely with an average person's common knowledge and experience, may appropriately judge, inter alia, (i) what actions the prison medical staff should have taken when plaintiff complained of headaches... and (iii) what the proper course of treatment was for plaintiff's condition."). In addition, whether a delay of five days in performing an emergent MRI breached the standard of care is not within the common knowledge of the jury. See Bond v. United States, 2008 WL 4774004, at *3 (E.D. Va. Oct. 27, 2008) (holding VMMA certification required for plaintiff's claim that two-month delay

9

in examination of finger caused by defendants constituted improper treatment).  Finally, the existence of plaintiff's other underlying medical concerns only renders the decision on when or what type of treatment to provide further outside the realm of a juror's common knowledge.  For these reasons, plaintiff cannot escape the expert certification requirement.

Plaintiff has informed the Court that he is in the process of seeking an expert certification.  However, submitting the required certification at this point in this matter would not comply with the requirements of the VMMA.  "If the plaintiff did not obtain a necessary certifying expert opinion at the time the plaintiff requested service of process on a defendant as required under this section, the court shall impose sanctions … and may dismiss the case with prejudice."  Va. Code § 8.01-20.1.  Because plaintiff had not obtained an expert certification at the time this matter was served on defendant, and defendant is only "liable in the same manner and to the same extent as a private individual under like circumstances," this matter will be dismissed.

### C. Procedural Arguments

Plaintiff asserts several procedural reasons why he believes summary judgment should not be granted in this matter.  First, plaintiff claims that, "in this district summary judgment cannot be granted prior to discovery," and that, in general, discovery is essential prior to granting of summary judgment.  Pl.'s Opp. at 9-10.  Plaintiff is incorrect that summary judgment cannot be granted in this district without discovery.  In addition, Federal Rule of Civil Procedure 56(d) allows for discovery "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d).  Here, where the only issue presented on summary judgment is whether plaintiff has obtained an expert certification as required by the VMMA, he has not established that he is unable to present facts essential to justifying his opposition.  Therefore, discovery is not necessary prior to ruling on defendant's Motion for Summary Judgment because plaintiff has not "specified legitimate needs

10

for further discovery." Strag v. Bd. of Trustees, Craven Cmty. Coll., 55 F.3d 943, 953 (4th Cir. 1995) (alteration and citation omitted).

Second, plaintiff contends that Local Rule 56(a) states that no motion for summary judgment "shall be considered until the completion of the briefing schedule," and because no briefing schedule has been conducted in this matter, summary judgment cannot be granted. Pl.'s Opp. at 9. Plaintiff is incorrect, as Local Rule 56(a) contains no such restriction.

Third, plaintiff asserts that the court could appoint an expert pursuant to Federal Rule of Evidence 706. Because, for the reasons stated above, any expert certification obtained at this time would not comply with the requirements of the VMMA, appointing an expert at this time would not prevent granting of summary judgment.

Fourth, plaintiff asserts that defendant's motion is actually a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and as such, it fails because Virginia Code § 8.01-20.1 is not jurisdictional. Plaintiff is incorrect that defendant's motion is a Rule 12(b)(1) motion, thus his jurisdictional argument need not be addressed.

Finally, plaintiff claims that defendant's motion is actually a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and therefore, summary judgment cannot be granted. In support of its motion, defendant relies on plaintiff's certification that he did not obtain a written opinion from an expert medical witness, but rather that his case falls under the common knowledge exception in Virginia Code § 8.01-20.1. Def.'s MSJ at Ex. 3. Because this document is not part of plaintiff's complaint, defendant properly filed a motion for summary judgment.

## IV. Constitutionality of Virginia Code § 8.01-20.1

Plaintiff asserts that Virginia Code § 8.01-20.1 is "a complete block to access to the courts." Amend. Compl. ¶ 88. In other words, plaintiff appears to argue that Virginia Code § 8.01-20.1 is unconstitutional because it denied him his right to access the courts. Inmates have a

11

right to meaningful access to the courts. Bounds v. Smith, 430 U.S. 817, 822 (1977)); Lewis v. Casey, 518 U.S. 343 (1996). To state a claim for denial of access to the courts, plaintiff must establish that he suffered an "actual injury or specific harm." Hause v. Vaught, 993 F.2d 1079, 1084-85 (4th Cir. 1993). Actual injury requires the inmate "to demonstrate that his nonfrivolous, post-conviction or civil rights legal claim has been frustrated or impeded." Jackson v. Wiley, 352 F. Supp. 2d 666, 679-80 (E.D. Va. 2004) (citing Lewis v. Casey, 518 U.S. 343 (1996))

> In other words, Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Lewis, 518 U.S. at 355. Because plaintiff is neither attacking his sentence nor asserting a claim that his civil rights were violated, any alleged impairment of his ability to pursue his FTCA claim is not a violation of his constitutional right to access the courts. See also Walker v. Zenk, 323 F. App'x 144, 147 (3d Cir. 2009) ("[A]s the District Court ... noted, because [plaintiff] is a prisoner, the injury requirement is not satisfied by just any type of frustrated legal claim. A prisoner must allege that official acts thwarted his non-frivolous challenge to his conviction or prison conditions. [Plaintiff's] tort claim falls into neither category of legal challenges. Accordingly, he did not state a claim for denial of access to the courts.") (internal quotation marks and citations omitted).

### V. Conclusion

For the reasons stated above, defendant United States of America has established that certain claims asserted by plaintiff are unexhausted, and that defendant is entitled to summary judgment as to the remaining claim. Therefore, defendant's motion will be granted. In addition, plaintiff has not established that Virginia Code § 8.01-20.1 violates his First Amendment right to

access the courts.  Finally, any pending motions will be denied, as moot.  An appropriate Order

shall issue.


Entered this __27__ day of __March_____ 2019.


Alexandria, Virginia

_____
Anthony J. Trenga
United States District Judge